Andreas, J.
(dissenting). Defendant stands convicted of robbery in the second degree in connection with an incident in which he allegedly sprayed complainant David Cushman in the face with mace and stole a diamond ring that Cushman had advertised for sale on Craigslist for $35,000. Before trial, defense counsel indicated that defendant wished to testify, and he suggested during the Molineux hearing that the defense would be that after defendant and Cushman fought, Cushman fabricated the robbery accusation against him. At trial, the defense was that Cushman, out of frustration and anger, assaulted and maced defendant after defendant had strung him along for several months with respect to the purchase of the ring, which gave Cushman a motive to fabricate the robbery accusation to avoid being charged with assault. In furtherance of this defense, before the Molineux evidence was admitted, defense counsel asked Cushman on cross-examination if he had become frustrated with defendant during their dealings and whether he had maced defendant. Thereafter, defendant testified that he had “[n]o intention of robbing” Cushman and that it was Cushman who sprayed defendant with mace and assaulted him.
The majority reverses the conviction on the ground that the trial court erred in admitting, under People v Molineux (168 NY 264 [1901]), evidence of a prior larceny in which defendant allegedly stole rings worth more than $90,000 from complainant Mary Nguyen that Nguyen had advertised on Craigslist.* In so ruling, the majority adopts the position that there can be no ambiguity as to defendant’s intent because it is inherent in his actions “[i]f the jury believed Cushman’s testimony” (majority op at 27). However, in this classic Molineux case, where defendant presented a different version of the events, the People were entitled to introduce evidence on their direct case anticipatory *31 of the defense that defendant would advance at trial that tended to disprove his claim that he had no intention of stealing the diamond ring from Cushman. Intent is an element of the crime that defendant explicitly and repeatedly placed in issue, and the trial court properly found that the probative value of the Nguyen larceny evidence exceeded any potential for prejudice. Accordingly, I dissent, and would affirm the judgment.
“[T]he familiar Molineux rule states that evidence of a defendant’s uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant’s propensity to commit the crime charged” (People v Cass, 18 NY3d 553, 559 [2012]). “On the other hand, evidence relevant to prove some fact in the case, other than the defendant’s criminal propensity, is not rendered inadmissible simply because it may also reveal that the defendant has committed other crimes” (People v Allweiss, 48 NY2d 40, 46-47 [1979]). Thus, evidence of a defendant’s uncharged crimes or prior misconduct is admissible where it is directly relevant to a material issue in the case, other than the defendant’s propensity to commit the crime charged, and its probative value outweighs its potential for undue prejudice to the defendant (Cass, 18 NY3d at 560).
“Determining whether the probity of such evidence exceeds the prejudice to the defendant is a delicate business, and as in almost every case involving Molineux or Molineux-type evidence, there is the risk that uncharged crime testimony may improperly divert the jury from the case at hand or introduce more prejudice than evidentiary value. Yet this case-specific, discretionary exercise remains within the sound province of the trial court, which is in the best position to evaluate the evidence” (People v Morris, 21 NY3d 588, 596-597 [2013] [internal quotation marks and citations omitted]; see also People v Gillyard, 13 NY3d 351, 355 [2009] [“The balancing of probative value against potential prejudice is entrusted to the trial court’s discretion”]).
“A commonly used, though nonexhaustive, list names five so-called Molineux exceptions—i.e., purposes for which uncharged crimes might be relevant: ‘to show (1) intent, (2) motive, (3) knowledge, (4) common scheme or plan, or (5) identity of the defendant’ ” (People v Arafet, 13 NY3d 460, 465 [2009], quoting People v Alvino, 71 NY2d 233, 242 [1987]). “When defendant’s *32 criminal intent cannot be inferred from the commission of the act or when defendant’s intent or mental state in doing the act is placed in issue, . . . proof of other crimes may be admissible under the intent exception to the Molineux rule” (People v Ingram, 71 NY2d 474, 479 [1988]; People v Alvino, 71 NY2d at 242-243 [other conduct may be admissible evidence “when proof of the act falls short of demonstrating that the defendant acted with a particular state of mind and where proof of a prior act is relevant to that issue”]).
“Robbery is defined as ‘forcible stealing’ (Penal Law § 160.00); larceny is an element of robbery” (People v Pagan, 19 NY3d 91, 96 [2012]). “A person steals property and commits larceny when, with the intent to deprive another of property or to appropriate the same to himself ... he wrongfully takes, obtains or withholds such property from an owner thereof’ (Penal Law § 155.05 [1]). Thus, to convict a defendant of robbery, the People must prove that he or she acted with the intent to take property from the owner thereof (People v Green, 5 NY3d 538, 543 [2005]).
The majority finds that defendant’s criminal intent can readily be inferred from Cushman’s description of the crime, and that Molineux evidence should not be admitted to bolster the uncertain credibility of the complaining witness. However, this is not your garden variety robbery where someone sticks a gun in the victim’s face, and the jury either believes the complainant’s version of the facts or does not. Defendant’s larcenous scheme took place over many weeks and whether defendant was a legitimate buyer who intended to flip the diamond ring and earn a quick profit, whether he planned to steal the ring from Cushman by trickery, and whether he planned to take the ring by force are all ambiguities in the People’s evidence. The fact that at the last second defendant impulsively panicked and assaulted Cushman and allegedly seized the ring does not eliminate the fact that defendant put his larcenous intent at issue through his cross-examination of Cushman and his own extensive testimony about his real intent or lack thereof. Defendant testified that he, not Cushman, was the victim, and his final acts, as described by Cushman, in and of themselves might not have been enough to resolve any doubts in the jurors’ minds about his intent to steal. Thus, the court properly admitted evidence of the uncharged larceny committed by defendant under similar circumstances as probative of defendant’s larcenous intent, a contested element of the crime (see People v Mobley, 176 AD2d 211 [1st Dept 1991], lv denied 78 NY2d 1128 [1991]).
*33 Particularly, there was a significant number of common factors in both crimes, including that defendant had multiple phone conversations and meetings with each victim in the same neighborhood in Manhattan to arrange his supposed purchase of the jewelry they advertised on Craigslist, told both victims that his mother was in the hospital when he needed an excuse for leaving a meeting, arranged meetings with them at which a promised third party never showed up, and displayed fake jewelry to them. Although the evidence that defendant took Nguyen’s rings by sleight of hand does not tend to establish that his meeting with Cushman was for the purpose of robbery, it was probative of defendant’s larcenous intent, and tended to dispel the notion that there was an innocent explanation for defendant’s conduct (see People v Chi Yuan Hwang, 2 AD3d 245, 246 [1st Dept 2003], lv denied 2 NY3d 738 [2004]; People v Taylor, 71 AD3d 1467, 1468 [4th Dept 2010], lv denied 15 NY3d 757 [2010] [“evidence was also relevant to rebut the defense that defendant had a legitimate reason for his presence in the office where the instant crimes occurred”]). Indeed, what could be more relevant than the Nguyen larceny to explain that defendant’s extensive interactions with Cushman were in furtherance of his intent to steal Cushman’s ring, rather than the typical arm’s-length negotiations between a true buyer and seller?
The majority ignores the facts that whether defendant actually committed the acts complained of is an issue in the case and that the Nguyen larceny tended to disprove defendant’s version of events, including his claim that he had no intent to steal the ring from Cushman and that he was the true victim. As set forth above, the chain of events leading up to the robbery created ambiguities as to defendant’s intent, and the earlier incident tended to place the trial evidence in context (see People v Martinez, 53 AD3d 508 [2d Dept 2008], lv denied 11 NY3d 791 [2008]; People v Bourne, 46 AD3d 1101, 1103 [3d Dept 2007], lv denied 10 NY3d 762 [2008]; People v Figueroa, 195 AD2d 477 [2d Dept 1993], lv denied 82 NY2d 753 [1993]). Defendant testified that he, not Cushman, was the victim, and his final acts, as described by Cushman, in and of themselves might not have been enough to resolve any doubts in the jurors’ minds about defendant’s intent to steal (see People v Wilson, 100 AD3d 1045, 1047-1048 [3d Dept 2012], lv denied 22 NY3d 998 [2013] [the defendant put his intent in issue, during cross-examination of a witness, by attempting to portray the witness as the true drug dealer]).
*34 Further,
“[e]vidence of uncharged crimes is not barred merely because the People are able to establish their case without it; they are entitled to present all the admissible evidence available to them . . . There is ample case law to support the proposition that uncharged crime evidence may be used to support testimony that otherwise might be unbelievable or suspect” (People v Steinberg, 170 AD2d 50, 73, 74 [1st Dept 1991], affd 79 NY2d 673 [1992]; see also People v Galarza, 59 AD3d 365, 366 [1st Dept 2009], lv denied 12 NY3d 853 [2009]).
While the majority believes that this is not such a case, defendant was severely beaten by Cushman, who was also handcuffed and arrested when the police arrived at the scene.
Nor should the evidence be excluded merely because it was detrimental to defendant. “If the evidence has substantial probative value and is directly relevant to the purpose:—other than to show criminal propensity—for which it is offered, the probative value of the evidence outweighs the danger of prejudice and the court may admit the evidence” (People v Cass, 18 NY3d at 560). Here, the probative value of the evidence outweighed any potential for undue prejudice, which was minimized by the court’s suitable limiting instructions, which at all times made clear that the Molineux evidence was admitted as proof of defendant’s larcenous intent (see People v Morris, 21 NY3d at 598). The fact that the larceny victim cried while testifying is irrelevant to the propriety of the court’s ruling, and her demeanor did not independently warrant a mistrial. Finally, even if the court’s admission of the Molineux evidence was error, it was harmless since there is no significant probability that the jury would have acquitted defendant if the Molineux evidence had been excluded (see People v Parker, 50 AD3d 330, 332 [1st Dept 2008], lv denied 10 NY3d 962 [2008]), given, among other things, the strength of the other evidence and defendant’s testimony in which he conceded his willingness to be untruthful when it benefitted him.
Friedman, J.E, and DeGrasse, J., concur; Andrias and Freedman, JJ., dissent in a separate opinion by Andrias, J.
Judgment, Supreme Court, New York County, rendered February 8, 2011, reversed, on the law, and the matter remanded for a new trial.

 Defendant was charged with grand larceny in the second degree and other larceny-related counts in the Nguyen case. When the People moved to consolidate the two cases, defendant opposed on the ground that he wished to testify in this case, whereas he intended to exercise his Fifth Amendment rights in the Nguyen case. The court conducted consolidated pretrial hearings, but severed the cases for trial.